UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JIANJIANG SU, et al.,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent. | Case No. 2:26-cv-00765-TMC<br><br>ORDER GRANTING MOTION FOR ATTORNEY'S FEES |

## I. INTRODUCTION

Petitioners obtained habeas relief when this Court held they had been unlawfully subject to mandatory immigration detention without an opportunity for bond. Dkt. 10. Their group habeas petition was brought to enforce the declaratory judgment entered in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025). All petitioners were class members, and they were represented by class counsel from the Northwest Immigrant Rights Project (NWIRP), who filed group petitions on a weekly basis to obtain efficient relief for as many class members as possible. *See, e.g.*, *Tiul Caal v. Hernandez*, No. 2:26-cv-00850-TMC, 2026 WL 754035 (W.D. Wash. Mar. 17, 2026); *Su v. Hernandez*, No. 2:26-cv-00765-TMC, 2026 WL 675287 (W.D. Wash. Mar. 10, 2026); *Flores-Velazquez v. Hermosillo*, No. 2:26-cv-00600-TMC, 2026 WL 523283 (W.D. Wash. Feb. 25, 2026).

Petitioners now move for an award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2142(d). Dkt. 13. They ask for fees at market rates rather than statutory EAJA rates given the complexity of both the underlying litigation and the enforcement process resulting from Respondents' failure to comply with the *Rodriguez Vazquez* declaratory judgment. *Id.* at 7–10. Respondents agree that Petitioners were the prevailing parties. But they argue that fees should be denied because their legal positions are substantially justified, and alternatively if fees are awarded, they should be limited to the statutory rates. *See* Dkt. 18 at 3–7.

For the reasons previously explained in *Garcia v. Wamsley*, 824 F. Supp. 3d 1159 (W.D. Wash. 2026), the Court concludes that Petitioners are entitled to attorney's fees under the EAJA. Petitioners were subject to mandatory immigration detention based on a legal theory that this Court concluded in *Rodriguez Vazquez* violates the law. Because the *Rodriguez Vazquez* declaratory judgment was binding on the parties to the case, and the defendants did not seek a stay of the judgment pending appeal, there was no reasonable basis for the government to ignore the judgment and force class members to file habeas petitions as their only means of seeking relief from unlawful detention. Respondents' position was therefore not substantially justified, and their arguments in defense of these decisions remain unpersuasive.

Petitioners also meet the standard for receiving attorney's fees at market rates. Because Petitioners are entitled to fees under the EAJA, the Court does not address their arguments that fees would also be warranted as a sanction for bad-faith litigation conduct.

## II. LEGAL STANDARD

"The EAJA provides . . . that in an action brought by or against the United States, a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting

28 U.S.C. § 2412(d)(1)(A)). "For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

"It is the government's burden to show that its position was substantially justified." *Medina Tovar*, 41 F.4th at 1089. Substantially justified means "justified to a degree that could satisfy a reasonable person." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Id.* (quoting *Pierce*, 487 U.S. at 565). The court examines "both the government's litigation position and the underlying agency action giving rise to the civil action." *Id.* Whether the government's position was substantially justified is a matter of discretion for the district court. *Id.* at 869.

With respect to the reasonableness of fees and costs, EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). A court may award market rates based on the limited availability of qualified attorneys when the attorneys possess (1) "distinctive knowledge and specialized skill" that was (2) "needful to the litigation in question" and (3) "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citation modified).

Under Federal Rule of Civil Procedure 54(d)(2)(C), when ruling on a motion for attorney's fees, the Court "must find the facts and state its conclusions of law as provided in Rule

52(a)," meaning "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1), 54(d)(2)(C).

## III. FINDINGS OF FACT

1. On September 30, 2025, in a case then captioned *Rodriguez Vazquez v. Bostock*, this Court granted summary judgment to members of a certified Bond Denial Class, defined to include the following individuals:

> [A]ll noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025).

2. The Court issued the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Id.*

3. The Court entered judgment in favor of the Bond Denial Class the same day. *See Rodriguez Vazquez v. Hermosillo*, No. 3:25-cv-05240-TMC, at Dkt. 66.

4. On October 28, 2025, Respondents appealed the declaratory judgment to the Ninth Circuit Court of Appeals. *See Rodriguez Vazquez*, No. 3:25-cv-05240-TMC, at Dkt. 71. The Ninth Circuit affirmed on July 30, 2026. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026).

5. Respondents never sought a stay of the declaratory judgment from either this Court or the Ninth Circuit while the appeal was pending.

6. On March 5, 2026, Petitioners sought a writ of habeas corpus. Dkt. 1. All six petitioners were *Rodriguez Vazquez* class members; for purposes of being bound by the judgment, they were parties to that case. *See Devlin v. Scardelletti*, 536 U.S. 1, 7–8 (2002). When the Court issued its judgment, it declared that their mandatory detention was illegal.

7. Yet the government continued to subject Petitioners to mandatory detention. While conceding Petitioners were class members, Respondents confirmed in their return that Petitioners "challenge their mandatory detention as unlawful" and "U.S. Immigration and Customs Enforcement ("ICE") detains Petitioners pursuant to 8 U.S.C. § 1225(b)." Dkt. 7 at 1.

8. On March 10, 2026, the Court granted the petition. The Court ordered that Petitioners receive the bond hearings to which they were entitled under 8 U.S.C. § 1226(a). Dkt. 10.

9. Petitioners now seek an award of $3,239.31 in attorney's fees and costs under the EAJA, which includes their briefing on this motion. Dkt. 13 at 11.

10. Respondents do not dispute that Petitioners are the prevailing party or challenge the hours expended by Petitioners' counsel. *See* Dkt. 18. Instead, Respondents argue that attorney's fees should be denied because their position was substantially justified, and alternatively that if fees are awarded, they should be limited to the EAJA's statutory rates. *Id.* at 3–7.

11. With respect to Petitioners' request for market rates, Respondents do not dispute that Petitioners' counsel possess "distinctive knowledge and specialized skill" in immigration law. *See* Dkt. 18 at 4; *Nadarajah*, 569 F.3d at 912. The distinctive

knowledge and skill of counsel from NWIRP is well supported by the record. *See, e.g.*, Dkt. 14 at ¶¶ 9–26; Dkt. 15 ¶ 8; Dkt. 16 ¶¶ 14–17.

12. They argue, however, that Petitioners have not shown those skills were "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah*, 569 F.3d at 912.

13. Respondents argue that even if the Court was correct in awarding Petitioners market rate fees for the first group enforcement petition, the process has now become routine, and "[t]his case only required counsel to identify detainees at the Northwest ICE Processing Center as possibly falling within the Bond Denial Class definition and to fill in the blanks in their template." Dkt. 18 at 4–5.

14. In contrast, to support their claim to enhanced fees, Petitioners submit declarations from Robert Pauw (Dkt. 15), Stacy Tolchin (Dkt. 16), and Trina Realmuto (Dkt. 17).

15. Mr. Pauw has practiced immigration law since 1987 and taught it for 25 years. Dkt. 15 ¶ 2. He has extensive experience litigating immigration cases in federal court. *Id.* ¶ 3. Pauw opines that there is "a shortage of lawyers in Washington State with the knowledge and skill required to competently handle federal immigration litigation in general and complex cases like this one in particular." *Id.* ¶ 6. Pauw attests to the complexity of the underlying *Rodriguez Vazquez* litigation, that the arguments made by Petitioners' counsel "laid the groundwork for hundreds of federal court decisions across the country rejecting *Matter of Yajure-Hurtado*" and that "NWIRP provided template habeas petitions and advisories that hundreds of attorneys throughout the country have relied on." *Id.* ¶ 9. He also opines that NWIRP's "ability to expeditiously respond" to the

government's noncompliance through group habeas petitions "on behalf of any class member who reaches out to them, demonstrates both their intimate knowledge of the legal issues and the history of this case." *Id.* ¶ 11. Finally, Pauw states that "successfully vindicating the petitioners' rights here required a level of skill and knowledge and perseverance that is unavailable in Washington at the statutory rate provided under the" EAJA. *Id.* ¶ 12.

16. Ms. Tolchin has practiced law for over 24 years and specializes in "immigration-related litigation before the federal courts." Dkt. 16 ¶¶ 3–6. She is also experienced in fee litigation under the EAJA and has co-authored a practice advisory on EAJA fees. *Id.* ¶ 7. She opines that "the expertise of Petitioners' counsel was essential to the success" of habeas petitions enforcing *Rodriguez Vazquez*, and that "[t]his expertise is especially important because most persons in detention do not have attorneys and do not have the resources to retain an attorney. NWIRP's expertise is also critical in obtaining relief in a quick and efficient manner in order to avoid additional weeks in detention." *Id.* ¶ 11. Tolchin attests that she has reviewed the hours expended by Petitioners' counsel, and notes that "because of their experience and skills, NWIRP was able to successfully litigate this claim expending far fewer hours than would have been required by other litigators to vindicate the class members' rights." *Id.* ¶ 20. Tolchin concludes that the rates sought by NWIRP "are significantly lower than the market rates for attorneys of similar experience in Central California, where I reside. I do not believe that this work could have been done by any attorney at the EAJA rate, adjusted for inflation." *Id.* ¶ 21.

17. Ms. Realmuto has practiced immigration law since the late 1990s and is currently the Executive Director of the National Immigration Litigation Alliance. Dkt. 17 ¶ 2. Her career "has focused on federal court and immigration litigation." *Id.* ¶ 4. Realmuto writes that she knows "of no other attorneys in Washington State" who would have been able to litigate the underlying *Rodriguez Vazquez* class action. *Id.* ¶ 14. She further attests that "Defendants' refusal to abide by this Court's declaratory judgment creates novel compliance issues that, frankly, in my years of experience, were previously unheard of" and that "the expertise of NWIRP counsel was essential to the quick success of the group habeas petition to enforce the declaratory judgment." *Id.* ¶ 15. She opines that "I do not believe that the petitioners could have located counsel with the level of expertise required for success at EAJA statutory rates, even adjusted for inflation." *Id.* ¶ 16.

18. Respondents have not submitted evidence to rebut these declarations.

## IV. CONCLUSIONS OF LAW

1. Petitioners are the prevailing party. 28 U.S.C. § 2412(d)(1)(A).

2. Respondents' position was not substantially justified.

3. This ruling is not about the underlying statutory interpretation dispute in *Rodriguez Vazquez.* Indeed, this Court has denied a motion for attorney's fees and found the government's position substantially justified in a case where the government opposed habeas relief while the dispositive motions in *Rodriguez Vazquez* remained pending. *Guzman Alfaro v. Wamsley*, No. 2:25-cv-01706-TMC, Dkt. 24 (W.D. Wash. Jan. 23, 2026). Nor is it about the litigation conduct of the attorneys from this district's United States Attorney's Office who have handled the enforcement habeas petitions. As best this Court can tell, those

attorneys have worked admirably and cooperatively to reach agreed briefing schedules, concede class membership where appropriate, and otherwise reduce the strain on the parties and the Court from these proceedings.

4. But to determine whether the government has met its burden to show that its action was substantially justified, courts must examine "both the government's litigation position and the underlying agency action giving rise to the civil action." *Meier*, 727 F.3d at 870.

5. Here, Respondents cannot meet that burden because of the underlying agency action that required Petitioners to file this habeas petition.

6. Respondents continued to subject Petitioners to mandatory detention after this Court had already entered a judgment granting relief to a certified class of detainees that included Petitioners and declaring they were not subject to mandatory detention. *See Rodriguez Vazquez*, 802 F. Supp. 3d at 1336.

7. Although the government appealed that judgment, it never sought to stay it.

8. It is a "basic proposition" that "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Id.*

9. But instead, the federal agency defendants in *Rodriguez Vazquez* chose to ignore the declaratory judgment, forcing class members to file habeas petitions as their only means of seeking relief from unlawful mandatory detention. *See Rodriguez Vazquez v. Hermosillo*, 816 F. Supp. 3d 1234, 1239–40 (W.D. Wash. 2026).

10. This Court has previously explained in a detailed order why those agencies were incorrect in their position that the declaratory judgment is merely "advisory." *See id.* at 1243. That reasoning is incorporated here.

11. For those same reasons, Petitioners should never have been forced to file this habeas petition. Although Federal Respondents conceded Petitioners' membership in the Bond Denial Class in their return to the habeas petition, *see* Dkt. 7 at 1, that does not change the reality that the fees and costs incurred here were solely the result of the government's unreasonable decision to ignore the class judgment in *Rodriguez Vazquez*.

12. Respondents rely on the arguments about substantial justification that they raised in *Garcia*, 824 F. Supp. 3d at 1167–68, while acknowledging the Court has previously rejected them. Dkt. 18 at 3. Petitioners object to the incorporation by reference of arguments made in other cases. Dkt. 19 at 2–3. But in the unique context of this case, in which the parties and the Court have handled *Rodriguez Vazquez* enforcement petitions and subsequent fee motions on a weekly basis, the Court finds this is sufficient for Respondents to preserve the issue. The Court's reasoning in *Garcia* rejecting their arguments is also incorporated here.

13. Respondents' position was therefore not substantially justified, and there are no other special circumstances that would make an award of fees under the EAJA unjust. *See* 28 U.S.C. § 2412(d)(1)(A).

14. Petitioners are entitled to an award of attorney's fees at market rates based on the "limited availability of qualified attorneys for the proceedings involved." *See id.*

15. It is undisputed that Petitioners possess "distinctive knowledge and specialized skill" in immigration law, and particularly immigration litigation in federal court. *See Nadarajah*, 569 F.3d at 912.

16. There is no serious question that this distinctive knowledge and specialized skill was necessary for the underlying *Rodriguez Vazquez* class action—a complex case that was one of the first to address a novel interpretation of § 1225 that continues to be litigated throughout the country.

17. One could argue that the habeas petitions enforcing *Rodriguez Vazquez* are less complex. Some of these petitions are filed by other local immigration attorneys, and the issues are generally defined by the scope of what was already decided in the class action.

18. But that view would overlook that the relevant "proceedings involved" here are the group habeas petitions brought by class counsel from NWIRP on a weekly basis. *See* 28 U.S.C. § 2412(d)(2)(A). As attested to by the supporting declarations from Pauw, Tolchin, and Realmuto, NWIRP's distinctive knowledge and skill allowed them to identify detained class members (many of whom might otherwise not be able to find or afford retained counsel) and bring their claims in weekly group petitions that ultimately required far fewer hours than would otherwise have been expended were each claim brought individually. *See M.M.*, 2026 WL 252076, at *3 (awarding $7,041.09 in EAJA fees and costs for single enforcement petition). NWIRP's expertise and development of the enforcement strategy—which, as the supporting declarations explain, they freely shared with colleagues—also helped enable other attorneys to bring individual enforcement petitions.

19. Petitioner's counsel also points out that their fee requests do not include "significant uncompensated time each week reviewing the I-213s produced in *Rodriguez Vazquez*, identifying class members, and assessing potential bars to class membership." Dkt. 19 at 5. Class counsel's expertise in approaching this process "is reflected in the outcomes of the petitions filed by NWIRP to enforce *Rodriguez Vazquez*—which are almost universally granted, but only *because* NWIRP first conducts thorough screening." *Id.* at 6. This skill contributes to NWIRP's overall ability to bring group petitions that secure relief for their clients in a highly efficient manner—in this case, obtaining writs of habeas corpus for 6 people for just over $3,000 in attorney's fees, including briefing on the fee petition. *See* Dkt. 14-1, 14-2.

20. Respondents' arguments that the work of class counsel requires nothing more than "fill[ing] in the blanks in their template," Dkt. 18 at 5, fails to engage with the basis for the Court's ruling. The Court has repeatedly explained that it is class counsel's unique ability to secure habeas relief for many class members at a time, who likely could not otherwise secure an attorney, and do so in a highly efficient, organized manner—all of which, it bears repeating, has been necessitated by the government's conduct—that demonstrates their entitlement to market rates.

21. The Court therefore concludes that NWIRP counsel's specialized skill was "needful to the litigation in question." *Nadarajah*, 569 F.3d at 912.

22. The unrebutted Pauw, Tolchin, and Realmuto declarations also support that attorneys with this type of knowledge and skill are not available elsewhere at the statutory EAJA rate. *See id.* at 915 (unrebutted declarations are sufficient to support this prong).

23. Hourly rates are reasonable when the "requested enhanced rates are 'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* at 916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)).

24. For the reasons previously explained in *Garcia*, 824 F. Supp. 3d at 1169–70, and in *Y.M.M. v. Wamsley*, No. 2:25-cv-02075, 2026 WL 809581, at *2 (W.D. Wash. Mar. 24, 2026), the Court finds the following hourly rates to be reasonable: $650 per hour for Leila Kang and $500 per hour for Amanda Ng. For two additional attorneys, Kevin Hollinz and Maura Velamoor, Petitioners seek only the statutory EAJA rate of $258.46. Dkt. 14-1 at 2.

25. Respondents have not challenged the number of hours expended: 4.0 hours for Kang; .7 hours for Ng; .8 hours for Hollinz; and .3 hours for Velamoor. Dkt. 14-1 at 2.

26. The Court therefore awards Petitioners $3,234.31 in attorney's fees. *Id.*

27. The Court awards Petitioners $5.00 in costs. *Id.*

## V. CONCLUSION

Because Respondents' position was not substantially justified and Petitioners are entitled to fees at market rates, the motion for attorney's fees (Dkt. 13) is GRANTED as set forth above. Petitioners are awarded fees and costs under the EAJA in the amount of $3,239.31. The judgment is hereby amended to include this award in favor of Petitioners. *See* Fed. R. Civ. P. 58(a)(3) (separate document not required for an order disposing of a motion for attorney's fees).

Dated this 1st day of September, 2026.

Tiffany M. Cartwright
United States District Judge